# In the United States Court of Federal Claims

Nos. 14-494C & 15-1349C
**CONSOLIDATED**
(Filed: September 11, 2018)
**NOT FOR PUBLICATION**

|  |  |  |
|---|---|---|
| MUHAMMAD TARIQ BAHA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | Motion to Dismiss; Subject Matter |
| BAHA, et al., | ) | Jurisdiction; Breach of Contract; |
| | ) | Contract Dispute Act; Certified Claim; |
| Plaintiffs, | ) | Defective Certification. |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER ON THE UNITED STATES' MOTION TO DISMISS[1]

The pending consolidated cases arise from a dispute brought pursuant to the

Contract Disputes Act, 41 U.S.C. §§ 7101-09 ("CDA") for unpaid rent allegedly owed by

the United States for use of a house belonging to the father of Muhammad Tariq Baha

---

[1] On July 11, 2018 the court directed the parties to file memoranda on the court's jurisdiction over the claims presented in Case Nos. 14-494C and 15-1349C. (ECF No. 73). In the government's response it requested that the court dismiss both Case Nos. 14-494C and 15-1349C for lack of subject matter jurisdiction. (ECF No. 75). Accordingly, the court has treated the government's request as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims.

("Mr. Baha") in Kabul, Afghanistan.  After Mr. Baha's father passed away, Mr. Baha filed a claim for unpaid rent with the contracting officer on January 18, 2010.[2]  Mr. Baha represented that he was the person with whom the United States had contracted for use of the house.  Mr. Baha submitted a new claim for unpaid rent and damages to cover the government's continuing failure to pay rent on January 19, 2014.

Each of Mr. Baha's claim submissions were filed on the United States Standard Form-95 ("SF-95"), entitled "CLAIM FOR DAMAGE, INJURY, OR DEATH." The forms include the following certification language: "I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM."  *See* Case No.14-494, ECF No.9-1 at 3-6 (immediately below cell 12a and immediately above cell 13a). The forms also stated below the signature line that a claimant faces both civil and criminal penalties for presenting a fraudulent claim or making a false statement. Specifically that "[t]he claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (*See 31 U.S.C. 3729*)" and that they would be subject to a "[f]ine of not more than $10,000 or imprisonment for not more than five years or both. (*See 18 U.S.C. 287, 1001.*)" *Id.* at 3.

In September 2014, the United States filed a motion to dismiss Mr. Baha's

---

[2] The United States stopped paying rent while a title dispute over ownership of the property was resolved by the Afghan court system.

complaint or, in the alternative, to require that Mr. Baha amend his complaint on the

grounds that it did not comport with the CDA.  *See* Def.'s Mot. Dismiss, No. 14-494C,

ECF No. 9.  After the parties briefed the motion, the court ordered Mr. Baha to file an

amended complaint addressing, among other things, the following:

> *Whether this court has jurisdiction with respect to plaintiff's*
> *claim for rent allegedly due between September 2012 and*
> *March 2014.*  In that connection, plaintiff should address the
> question of whether he has complied with the provisions of
> the Contract Disputes Act ("CDA") requiring a contractor to
> submit a claim to the contracting officer before filing a
> lawsuit in the Court of Federal Claims.  See 41 U.S.C.
> § 7103.  To the extent that plaintiff is alleging that the
> government was a holdover tenant under the terms of a
> specific lease, plaintiffs must demonstrate that he has satisfied
> the requirements for a CDA claim or consider withdrawing
> the claim until he can meet the CDA's jurisdictional
> requirements.

 *See* Order, No. 14-494C, ECF No. 13 (first emphasis added).

      In March 2015, Mr. Baha filed his First Amended Complaint.  *See* Am. Compl.,

No. 14-494C, ECF No. 14.  In his amended complaint, Mr. Baha alleged that he had

submitted "claim forms" to the United States, identified above.  *See* Am. Compl., No. 14-

494C, at 3 (¶ 11), ECF No. 14.  In May 2015, the United States filed a new motion to

dismiss or to provide notice to interested parties.  *See* Def.'s Mot. Dismiss, No. 14-494C,

ECF No. 17.  The United States, in that motion, also contested whether the court had

jurisdiction over any claim for "rent after September 2009 because [Mr. Baha] failed to

submit a certified claim to the contracting officer. . ."  *See id.* at 6.  Finally, in its new

motion to dismiss, the United States represented that it had learned that Mr. Baha had other relatives with a potential claim to the rental payments. *Id.* at 12.

In August 2015, the court denied the United States' motion. *See* Opinion, No. 14-494C, ECF No. 20. As to jurisdiction, the court stated that Mr. Baha "established jurisdiction under the CDA for the entire amount that he seeks in his amended complaint, including the first three months of 2014." *See id.* at 9-10. The court ordered, however, that the Baha Family be sent notice of the litigation. *See id.* at 11-13. The issue of CDA certification was not addressed.

In November 2015, after litigation notices were sent to the Baha Family, the Baha Family filed their own separate complaint. *See* Compl., No. 15-1349C, ECF No. 1. The Baha Family complaint is virtually identical to Mr. Baha's amended complaint. It is not disputed that the Baha Family never filed a certified claim with the contracting officer.

The court consolidated Mr. Baha's and the Baha Family's lawsuits on January 15, 2016. The court then stayed the consolidated case pending resolution of state court litigation filed over financial disputes within the Baha family. *Baha v. Baha*, No. MSC14-091927 (Contra Costa Co. Sup. Ct.). *See* Order, No. 14-494C, ECF No. 35. On April 3, 2017, the stay in the pending case was lifted after *Baha v. Baha* was dismissed without any decision by the court. *See* Order, No. 14-494C, ECF No. 42.

On September 8, 2017, after answers were filed in Nos. 14-494C and 15-1349C, the United States gave notice in a joint status report that it intended to seek dismissal of both cases. *See* J.S.R., No. 14-494C, ECF No. 51. On September 14, 2017, after a status conference, the court ordered limited discovery, including discovery on the issue of

whether plaintiffs had established jurisdiction under the CDA. *See* Order, No. 14-494C, ECF No. 53; Jointly Prop. Discovery Plan, No. 14-494C, ECF No. 54; Order Adopting Plan, No. 14-494C, ECF No. 55. The parties conducted that discovery. Thereafter, on July 11, 2018, the court ordered the present briefing on the issue of jurisdiction. *See* Order, No. 14-494C, ECF No. 73.

## DISCUSSION

In every case the court must consider whether it has jurisdiction to hear the dispute. The right to challenge jurisdiction "can never be forfeited or waived," *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (internal quotation marks and citation omitted), and "courts . . . have an independent obligation to determine whether . . . jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. at 514. In this connection, plaintiffs have the burden of establishing "jurisdiction by a preponderance of the evidence." *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

In cases involving CDA claims, like this one, one factual "prerequisite for jurisdiction. . . over a CDA claim" concerns whether a valid claim was first submitted to the contracting officer. *See Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1111-12 (Fed. Cir. 2013) (citations omitted). The CDA states that, "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1). A claim is defined as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or

interpretation of contract terms, or other relief arising under or relating to this contract."

48 C.F.R. § 52.233-1(c).  And where, as here, the claim seeks relief of over $100,000, the

claim must be submitted as certified to be valid.  *See* 41 U.S.C. § 7103(b).  Under the

CDA, a claimant must certify that: "(A) the claim is made in good faith; (B) the

supporting data are accurate and complete to the best of the contractor's knowledge and

belief; (C) the amount requested accurately reflects the contract adjustment for which the

contractor believes the Federal Government is liable; and (D) the certifier is authorized to

certify the claim on behalf of the contractor."  *See* 41 U.S.C. § 7103(b)(1).  (For CDA

purposes, a "contractor" is "a party to a Federal Government contract other than the

Federal Government."  *See* 41 U.S.C. § 7101(7).)  The CDA's certification requirement

aims "to insure that complete, clear, and honest claims *are presented to Federal

contracting officers*" to review.  *See Scan-Tech Sec., L.P. v. United States*, 46 Fed. Cl.

326, 340 n.12 (2000) (quoting H.R. Rep. No. 102-1006, at 28) (original emphasis).

"[T]he contracting officer does not have the authority to issue a decision" on a claim,

needing certification, that is not properly certified.  *See W.M. Schlosser Co. v. United

States*, 705 F.2d 1336, 1338 (Fed. Cir. 1983) (internal quotation marks and citation

omitted).

It is well-settled that a mere "defect in the certification. . . does not deprive a

court. . . of jurisdiction over the claim." Defects in certifications can be "corrected."  *See*

41 U.S.C. § 7103(b)(3).  This court has held that a correctable, defective certification

must have more than "merely a modicum of similarity to the standard CDA certification,"

*see Scan-Tech Sec., L.P. v. United States*, 46 Fed. Cl. 326, 335 (2000), and "at least

'resemble the statutory language.'"  *See CSX Transp., Inc. v. United States*, 123 Fed. Cl.

244, 252 (2015) (quoting *San Gray Enters., Inc. v. United States*, 32 Fed. Cl. 526, 530

(1995)).  A correctable, defective certification must show a "good faith attempt" to

certify as required.  *See Scan-Tech Sec., L.P.*, 46 Fed. Cl. at 335 (citations omitted).

The United States contends that Mr. Baha's and the Baha Family's complaints

must be dismissed because they have failed to satisfy the CDA prerequisites for filing a

CDA claim in this court.  The United States makes separate arguments in favor of

dismissal of the complaints filed by Mr. Baha and the Baha Family.  The United States

argues that Mr. Baha's case must be dismissed because although he filed a claim for

payment with the contracting officer, the SF-95 certifications he signed on those forms are

not sufficient to meet the CDA's certification requirements and thus his claim must be

dismissed.  According to the United States, Mr. Baha's certifications are not simply

defective. Rather, the United States argues, the certifications must be disregarded as

wholly inadequate to meet the requirements of the CDA.  The United States argues with

regard to the Baha Family, that the Baha Family case must be dismissed because the Baha

Family never submitted any claim to the contracting officer and thus cannot satisfy the

threshold jurisdictional prerequisites for bringing a CDA claim in this court.

Turning first to the government's contentions regarding the inadequacy of Mr.

Baha's SF-95 certification,[3] the government argues that the certification is not adequate

---

[3] The United States argues and the court agrees that only the January 2014 SF 95
certification is relevant in that Mr. Baha did not file a claim within the time allowed
regarding his 2010 SF -5 claim.  Specifically, Mr. Baha did not file his complaint with
this court until June 9, 2014, which is more than the "12 months from the date of the

7

because the SF-95 says nothing like: (A) "the claim is made in good faith"; or (B) "the supporting data are accurate and complete . . ."; or (C) "the amount requested accurately reflects the contract adjustment for which . . . the Federal Government is liable"; or (D) "the certifier is authorized to certify the claim on behalf of the contractor."  *See* 41 U.S.C. § 7103(b)(3).  The government argues that the form says nothing about "good faith," "supporting data," or any "contract" or "authorized" certifier at all.  In support of this contention, the United States relies on *CSX Transp., Inc. v. United States*, 123 Fed. Cl. 244 (2015) wherein the court determined in a case involving a Sidetrack and Lease Agreement that the certification of the claim on a SF-95 was not sufficient to meet the criteria of a CDA certification.

The court finds that in this case Mr. Baha's certification on the SF-95 was sufficient to meet the purposes of the CDA's certification requirement and thus the SF-95 certification provided by Mr. Baha gives rise to a defective certification that can be corrected.  Specifically, while the court recognizes that the certification statement itself on the SF-95 does not meet the requirements of ensuring that claims are made in good faith, with supporting data, and are signed by an authorized certifier, the SF-95 provision for civil penalties for presenting a false claim and criminal penalties for making a fraudulent claim or false statement are more than adequate to provide the government with the same protections a CDA certification is intended to provide.  Where, as here, it

---

receipt of the contracting officer's decision" on the 2010 SF-95 claim and thus his suit based on the 2010 SF-95 claim is outside the statute of limitations and cannot be reviewed by this court.  41 U.S.C. § 7104(b)(3).

is clear that the claimant is seeking damages for breach of a rental contract with the government and makes such claims with civil and criminal penalties attached, the court finds that such a claim is within the definition of a "defective" certification under the CDA.

In concluding that Mr. Baha has provided the court with a "defective" certification, the court finds it is important to consider that Mr. Baha is not a sophisticated government contractor and was diligent in his pursuit of the subject rent. It is undisputed that he returned to Afghanistan in order to litigate his title to the subject property. It is also undisputed that when the government challenged the adequacy of his 2010 claim, Mr. Baha filed a second claim to protect his interests and again stated subject to significant civil and criminal penalties that he was owed unpaid rent for the months the United States used his property and damages for the time he lost securing his claim.

With regard to the Baha Family, however, the court agrees with the United States that because the Baha Family has not made any claim to the contracting officer subject to any certification the Baha Family has not complied with the jurisdictional pre-requisites of the CDA. As such, its complaint must be dismissed. In this connection, the court finds that the Baha Family cannot rely on Mr. Baha's submissions to the contracting officer. The family is making a separate claim from Mr. Baha. It is clear from a review of Mr. Baha's SF 95 that he only claimed unpaid rent and damages for himself. For this reason, the Baha family's failure to submit their own CDA claim is fatal to establishing jurisdiction in this court. Having failed to file any certification sufficient to meet the

CDA requirements, the Baha Family will have to file their own CDA claim with the contracting officer if they wish to pursue their claim for rent against the United States.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss No. 14-494C is **DENIED**.  Mr. Baha's 2014 claim is remanded to United States Army Corps of Engineers, Afghanistan Engineer District, Real Estate Office ("USCEA-AED") for correction and consideration of the claim pursuant to RCFC 52.2. The case will be stayed pending the remand. The government shall provide the court with a specific address to send the remand order by **September 18, 2018**.  The parties shall file a joint status report 90 days from the decision from the USCEA-AED Real Estate Office.

The United States' motion to dismiss No. 15-1349C is **GRANTED**.  This case will be unconsolidated from No. 14-494C.  The Clerk is **DIRECTED** to enter judgment dismissing No. 15-1349C.  No costs.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge